JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIOT GAMES, INC. and BUNGIE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CAMERON SANTOS d/b/a "GATORCHEATS," an individual, and Does 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:21-cv-00195 MCS-AS <br><br> Judge: Hon. Mark C. Scarsi <br><br> **STIPULATED JUDGMENT AND PERMANENT INJUNCTION** |

Pursuant to the Parties' Stipulation dated March 30, 2021, the Court hereby orders that judgment is entered against Defendant Cameron Santos d/b/a "Gatorcheats" ("Defendant") as follows.

IT IS HEREBY FOUND, ORDERED, ADJUDGED as follows:

1. Judgment shall be entered against Defendant in the amount of two million dollars ($2,000,000), due and payable solely pursuant to the terms set forth in the Parties' Confidential Settlement Agreement and Release.

2. Defendant, all persons acting under Defendant's direction or control (including but not limited to Defendant's agents, representatives, and employees), and those persons or companies in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise, shall immediately and permanently cease and desist from any of the following:

**As to Plaintiff Riot Games, Inc.:**

(a) taking any steps on Defendant's own behalf or assisting others in creating, distributing, advertising, marketing or otherwise making available the software product known as "Gatorant" (the "Riot Cheating Software") or any software whose use infringes copyrights, patents, or trademarks ("Intellectual Property") owned or controlled by Riot Games, Inc. or its parents, subsidiaries, or affiliates of which Riot Games, Inc. has heretofore made Defendant actually aware (collectively, "Riot"), circumvents technological measures that effectively control access to Riot's games (including but not limited to "Valorant"), violates Riot's Terms of Service ("TOS"), or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, distributed or operated by Riot;

(b) obtaining, possessing, accessing or using the Riot Cheating Software or any software whose use by Defendant infringes any of Riot's Intellectual Property, circumvents technological measures that effectively control access to Riot's games, violates the TOS, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot;

(c) Promoting, advertising, or encouraging or inducing others to purchase or use (including via any social media account, website, or video-sharing account) the Riot Cheating Software or any software whose use infringes any of Riot's Intellectual Property, circumvents technological measures that effectively control access to Riot's games, violates the TOS, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot;

(d) selling, reselling, or processing payments for the Riot Cheating Software or any software whose use infringes any of Riot's Intellectual Property, circumvents technological measures that effectively control access to Riot's games, violates the TOS, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot;

(e) assisting in any way with the development of the Riot Cheating Software or software whose use infringes any of Riot's Intellectual Property, circumvents technological measures that effectively control access to Riot's games, violates the TOS, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot;

(f) sharing, copying, transferring, or distributing the Riot Cheating Software or any software (or portion thereof) whose use infringes any of Riot's

Intellectual Property, circumvents technological measures that effectively control access to Riot's games, violates the TOS, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot;

(g) publishing or distributing any source code or instructional material for the creation of the Riot Cheating Software or other software whose use infringes any of Riot's Intellectual Property rights, circumvents technological measures that effectively control access to Riot's games, violates the TOS, including but not limited to the Riot Cheating Software, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot or its parents, subsidiaries, or affiliates;

(h) operating, assisting or linking to any website designed to provide information to assist others in accessing, developing or obtaining the Riot Cheating Software or any software whose use infringes any of Riot's Intellectual Property rights, circumvents technological measures that effectively control access to Riot's games, violates the TOS, or is designed to exploit or enable the exploitation of Valorant or any other game owned, published, or operated by Riot;

(i) investing or holding any financial interest in any enterprise which Defendant knows or has reason to know is now, or intends in the future to be, engaged in any of the foregoing activities prohibited by this Judgment and Permanent Injunction.

(j) reverse engineering, decompiling, packet editing, or otherwise manipulating without authorization, any game owned, published, or operated by Riot, including Valorant, or providing assistance to any person or entity engaged in such activities.

**As to Plaintiff Bungie, Inc.:**

(a) taking any steps on Defendant's own behalf or assisting others in creating, distributing, advertising, marketing or otherwise making available the software referenced in the Complaint designed to be used with Destiny 2 (the "Bungie Cheating Software")[1] or any software whose use infringes Intellectual Property owned or controlled by Bungie, Inc. or its parents, subsidiaries, or affiliates of which Riot Games, Inc. has heretofore made Defendant actually aware (collectively, "Bungie"), circumvents technological measures that effectively control access to Bungie's games (including but not limited to "Destiny 2" and its expansions), violates Bungie's Software License Agreement ("SLA"), or is designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, distributed or operated by Bungie;

(b) obtaining, possessing, accessing or using the Bungie Cheating Software or any software whose use by Defendant infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

(c) Promoting, advertising, or encouraging or inducing others to purchase or use (including via any social media account, website, or video-sharing account) the Bungie Cheating Software or any software whose use infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is designed to exploit or

---

[1] The Riot Cheating Software and Bungie Cheating Software are referred to collectively as the "Cheating Software."

enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

        (d)     selling, reselling, or processing payments for the Bungie Cheating Software or any software whose use infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

        (e)     assisting in any way with the development of the Bungie Cheating Software or any software whose use infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

        (f)     sharing, copying, transferring, or distributing the Bungie Cheating Software or any software whose use infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

        (g)     publishing or distributing any source code or instructional material for the creation of the Bungie Cheating Software or any software whose use infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is

designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

      (h)    operating, assisting or linking to any website designed to provide information to assist others in accessing, developing or obtaining the Bungie Cheating Software or any software whose use infringes any of Bungie's Intellectual Property, circumvents technological measures that effectively control access to Bungie's games, violates the SLA, or is designed to exploit or enable the exploitation of Destiny 2 or any other game owned, published, or operated by Bungie;

      (i)    investing or holding any financial interest in any enterprise which Defendant knows or has reason to know is now, or intends in the future to be, engaged in any of the foregoing activities prohibited by this Judgment and Permanent Injunction.

      (j)    reverse engineering, decompiling, packet editing, or otherwise manipulating without authorization, any game owned, published, or operated by Bungie, including Destiny 2, or providing assistance to any person or entity engaged in such activities.

3.    Defendant shall take all necessary steps to disable, remove, or otherwise shut down any social network accounts under his control dedicated to distribution or promotion of the Riot Cheating Software, the Bungie Cheating Software, or any other software whose use infringes any of Riot's Intellectual Property rights or Bungie's Intellectual Property Rights, circumvents technological measures that effectively control access to Riot's or Bungie's games, or violates the TOS or SLA, and shall any take all necessary steps to remove any information

on any non-dedicated (e.g., personal) social network accounts under his control used to distribute or promote any of the foregoing.

4. Defendant is ordered to destroy the Riot Cheating Software, Bungie Cheating Software, and any software product whose use infringes any of Riot's Intellectual Property or Bungie's Intellectual Property, circumvents technological measures that effectively control access to Riot's or Bungie's games, or violates the TOS or the SLA, or is designed to exploit or enable the exploitation of Valorant, Destiny 2, or any other game owned, published, or operated by Riot or Bungie, pursuant to the terms set forth in the Parties' Confidential Settlement Agreement and Release.

5. Any company or entity that any Defendant controls in the future shall also comply with the provisions of this Judgment and Permanent Injunction.

6. The Parties irrevocably and fully waive notice of entry of this Judgment and Permanent Injunction and notice and service of the entered Judgment and Permanent Injunction and understand, confirm and agree that violation of the Judgment and Permanent Injunction will expose Defendant to all penalties provided by law, including contempt of Court.

7. The Parties irrevocably and fully waive any and all rights to appeal this Judgment and Permanent Injunction, to have it vacated or set aside, to seek or obtain a new trial thereon or otherwise to attack in any way, directly or collaterally, its validity or enforceability.

8. Nothing contained in this Judgment and Permanent Injunction shall limit the right of the Parties to seek relief, including without limitation damages,

for any and all infringements of any Intellectual Property rights occurring after the date of this Judgment and Permanent Injunction.

9. The Court shall retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Judgment and Permanent Injunction. The Parties consent to the personal jurisdiction of the United States District Court for the Central District of California for purposes of enforcing the Judgment and Permanent Injunction.

10. This Stipulated Judgment and Permanent Injunction is entered without the Court making any findings of fact or conclusions of law and shall not be construed or deemed as an adjudication on the merits.

11. The Court finds there is no just reason for delay in entering this Judgment and Permanent Injunction and, pursuant to Federal Rule of Civil Procedure 54, the Court directs immediate entry of this Judgment and Permanent Injunction against Defendant.

DATED: May 12, 2021

By: *Mark C. Scarsi*
Mark C. Scarsi
United States District Judge

9